1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ENTERPRISES INTERNATIONAL,
INC., et al.,

                    Plaintiffs,

v.

INTERNATIONAL KNIFE & SAW,
INC., a South Carolina corporation, et al.,

                    Defendants.

CASE NO. C12-5638 BHS

ORDER GRANTING AND
DENYING IN PART
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

This matter comes before the Court on Defendant International Knife & Saw,

Inc.'s ("IKS-SC") motion for summary judgment (Dkt. 18). The Court has considered the

pleadings filed in support of and in opposition to the motion and the remainder of the file

and hereby grants and denies in part the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

On July 18, 2013, Plaintiffs Enterprises International, Inc. ("Enterprises") and

Legacy Automation, Inc ("Legacy"), a wholly-owned subsidiary of Enterprises, which

are both Washington corporations (collectively "Plaintiffs"), filed a complaint alleging

multiple causes of action against IKS-SC related to misuse of technical drawings for

knife blades ("Lamb drawings").  Dkt. 1.  On May 23, 2013, IKS-SC, a South Carolina

1   corporation, filed a motion for summary judgment seeking dismissal as a matter of law

2   for all claims alleged against it.  Dkt. 18.  On June 10, 2013, Plaintiffs filed a response in

3   opposition to IKS-SC's motion for summary judgment.  Dkt. 25.  On June 14, 2013, IKS-

4   SC filed a reply.  Dkt. 32.

5        On July 26, 2013, the parties submitted a stipulation and proposed order seeking to

6   enlarge the case schedule and permitting Plaintiffs to amend their complaint.  Dkt. 66.

7   On July 26, 2013, the Court entered the order permitting enlargement of the case

8   schedule and amendment of the complaint. Dkt. 67. On July 29, 2013, Plaintiffs filed an

9   amended complaint adding additional parties and claims. Dkt. 70.  Plaintiff

10  Overstrapping International, a Washington corporation and wholly-owned subsidiary of

11  Enterprises, was joined. *Id.* at 1-2.  Additionally, Plaintiffs named International Knife &

12  Saw, Inc, a Quebec corporation, and International Knife & Saw De Mexico, S.A. De

13  C.V., a Mexican variable capital corporation, as Defendants. *Id.* at 1-3.

14       Plaintiffs' amended complaint alleges eight causes of actions and seeks monetary

15  damages, an order of replevin, injunctive relief, as well as attorney's fees, costs and

16  expenses. *See* Dkt. 70 at 14-15.  Plaintiffs' causes of action are: (1) breach of contract;

17  (2) breach of implied contract in fact: quantum meruit; (3) breach of contract implied in

18  law: unjust enrichment; (4) misappropriate of trade secrets pursuant to RCW 19.108, *et*

19  *seq.*; (5) conversion; (6) unfair competition pursuant to RCW 19.86, *et seq.*; (7) replevin;

20  and (8) copyright infringement pursuant to 17 U.S.C. § 106. *Id.* at 8-14.

21

22

## II. BACKGROUND

Plaintiff Enterprises is a holding corporation. Dkt. 26 at 2 (Declaration of David Lamb ¶ 6). Over several decades it has owned different companies which design, manufacture, and sell products under the brand name "Lamb" in the pulp and paper industry. *Id*. ¶¶ 1-26. Enterprises maintains that its practice has long been to hold title to all intellectual property, including design and engineering drawings, created by the Lamb family of companies and their employees. *Id*. ¶¶ 9-10; Declaration of C. James Frush, Exs. 1, 12. Enterprises licenses its wholly-owned intellectual property to its subsidiaries. *Id*.; Frush Decl. Exs. 3, 13.

Haines & Emerson, Inc. was one of Enterprises' subsidiaries. Lamb Decl. ¶¶ 7-15; Frush Decl. Ex. 2. Haines & Emerson owned Lamb Grays Harbor, Co. ("LGH"). *Id*. Enterprises licensed certain intellectual property to Haines & Emerson and LGH, including design drawings for the knives used in Lamb cutter layboys. *Id*.; Frush Decl., Ex. 3. Until 2001, LGH sold the Lamb cutter layboy knives. *Id*. ¶ 26.

LGH hired IKS to fabricate knives. Frush Decl., Ex. 4. LGH provided IKS with the necessary design drawings for the knives. Lamb Decl. ¶ 21; Frush Decl., Ex. 4 at EII 342 (referring to "drawings in your (IKS's) possession"). Each of the LGH drawings displays the following warning: "THE DESIGN COVERED BY THIS DRAWING IS THE PROPERTY OF LAMB AND NO PORTION OF IT IS TO BE USED WITHOUT THEIR PERMISSION." Frush Decl., Ex. 5.

Each purchase order stated it was "SUBJECT TO THE STATED CONDITIONS, INCLUDING THOSE ON THE REVERSE SIDE." Frush Decl., Ex. 6, EII 814. The

conditions instructed IKS to sign and return the acknowledgement copy of the purchase

order, "which will constitute your acceptance of all conditions herein." *Id*., at EII 815,

¶6. The conditions also included:

> 9. EXCLUSIVE RIGHTS
> A. You agree that all specifications and drawings furnished to you in connection with this order shall be used only in the manufacture of material furnished to us.
>
> ***
>
> 15. DRAWINGS, BLUE PRINTS, TOOLS, DIES, ARTWORK, ETC.
> A. Whenever you have our property in your possession, by virtue of this order, you will be considered an insurer of the property and will be responsible for its safe return to us.
>
> ***
>
> 21. APPLICABLE LAWS & REGULATIONS, FEDERAL, STATE, ETC.
>
> ***
>
> B. The contract resulting from the acceptance of this order shall be construed according to the laws of the State from which this order issues as shown by our address.

*Id.* Additionally, LGH maintains that its practice was to provide design drawings to a

vendor only after the vendor signed a non-disclosure agreement, agreeing not to use the

drawings for any purpose other than those outlined by LGH.  Lamb Decl. ¶ 22; Frush

Decl., Ex. 7.

LGH accumulated a trade debt to IKS.  In September 2001, Enterprises terminated

Haines & Emerson's and LGH's license to the design drawings for the cutter layboy

knives.  Lamb Decl. ¶ 15; Frush Decl. Ex. 9.  On September 24, 2001, Enterprises

incorporated a new wholly owned subsidiary, plaintiff Legacy, which eventually took

over the remaining business of LGH.  Lamb Decl. ¶¶ 18, 19, 26; Frush Decl., Ex. 10.

LGH's corporate existence finally expired on July 31, 2006.  Swanson Decl., Ex. A, p. 7.

In 2001, US Bank foreclosed on and acquired all of LGH's assets.  Lamb Decl. ¶ 16; Frush Decl., Ex. 11. U.S Bank then sold those assets to Ovalstrapping Acquisition Corporation, a wholly owned subsidiary of Ovalstrapping Incorporated ("Ovalstrapping"), which is a wholly owned subsidiary of Enterprises.  *Id.*; Frush Decl., Exs. 11 and 12.  Enterprises and Ovalstrapping Acquisition Corporation entered into an assignment agreement transferring all intellectual property acquired in the purchase of LGH's assets to Enterprises.  *Id.*; Frush Decl., Ex. 12.  According to Enterprises, it became the successor in interest to LGH's rights under its contracts with IKS.  Dkt. 25 at 10.  On October 1, 2003, Enterprises licensed to Legacy the use of the Lamb design drawings at issue.  *Id.*, ¶ 19; Frush Decl., Ex. 13.

In September 2001, IKS filed for Chapter 11 reorganization.  Swanson Decl., Ex. E. In 2003, during IKS's Chapter 11 reorganization process, Legacy bought knives from IKS based on the Lamb drawings.  Frush Decl., Ex. 14, EII 213.  Although the purchase order indicates that its acceptance "creates a binding contract" "according to the terms stipulated [t]herein and in the attached purchase order," IKS-SC maintains that no terms or conditions were attached to the purchase order associated with Legacy's purchase, as the documents produced by Enterprises were not sequentially numbered and the terms and conditions are submitted as a separate exhibit.  Swanson Suppl. Decl., Ex G and Frush Decl., Ex. 14, EII 213 and 029.

In June 2003, the final decree closing IKS's chapter 11 bankruptcy was issued. Dkt. 32 at 8 (*citing* Swanson Decl., ¶ 6).  In October 2003, the reorganized IKS merged with Simonds International ("Simonds").  *Id.* (*citing* Swanson Decl. ¶ 10 and Ex. 1). In

1  January of 2004, LGH filed a Chapter 7 bankruptcy petition, and it proceedings

2  terminated in July 2005 with no asset distribution.  *Id*. (*citing* Swanson Decl., ¶ 4 and Ex.

3  C).

4       In 2005 and 2006, Overstrapping and Simonds enter into purchase order

5  agreements for products based on Lamb drawings.  Dkt. 32 at 8-9 (*citing* Swanson Decl.,

6  Ex. H and Swanson Supp. Decl., ¶ 12 and Ex. J).

7       In June of 2006, IKS/ACM and Simonds and IKS entered into an asset purchase

8  agreement, which IKS-SC asserts formed IKS/ACM.  Dkt. 32 at 9 (*citing* Swanson Decl.,

9  Ex. J).  In July and December 2007, Overstrapping and IKS/ACM entered into a non-

10  disclosure agreement and a purchase order regarding a product per a certain Lamb

11  drawing. Dkt. 32 at 9.

12       In January 2008, according to IKS-SC, a security purchase agreement was entered

13  into by multiple entities resulting in its formation.  Dkt. 32 at 9 (*citing* Swanson Decl.,

14  Ex. K (filed under seal)).

15  **III. DISCUSSION**

16       IKS-SC bases its motion for summary judgment on three main arguments. First,

17  IKS-SC argues that Enterprises' claims are barred, as they were discharged in

18  bankruptcy.  *Id*. at 14-15.  Second, IKS-SC maintains that Enterprises' claims are barred

19  by the applicable statute of limitations or equitable doctrine of laches.  *Id*. at 16-17.

20  Third, IKS-SC argues that Enterprises' state law claims are subject to the Uniform Trade

21  Secret Act ("UTSA") claim pre-emption, requiring dismissal of its contract and quasi-

22  contract claims as well as its tort and restitutionary claims.  *Id*. at 17-20.

1    Enterprises opposes the motion for summary judgment.  Dkt. 25.  Enterprises

2    argues that neither IKS-SC's Chapter 11 plan confirmation nor its reorganization affect

3    Enterprises' post-petition claims or discharge its claims, nor does LGH's Chapter 7

4    bankruptcy bar any of its claims.  *Id*. at 14-17.  Enterprises also contends that its claims

5    are not barred by the statute of limitations or laches.  *Id*. at 17-21.  Enterprises maintains

6    that UTSA does not require dismissal of any of its claims.  *Id*. at 25-29.

7    **A.    Summary Judgment Standard**

8    Summary judgment is proper only if the pleadings, the discovery and disclosure

9    materials on file, and any affidavits show that there is no genuine issue as to any material

10   fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

11   The moving party is entitled to judgment as a matter of law when the nonmoving party

12   fails to make a sufficient showing on an essential element of a claim in the case on which

13   the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

14   323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole,

15   could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec.*

16   *Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986) (nonmoving party must

17   present specific, significant probative evidence, not simply "some metaphysical doubt").

18   *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists

19   if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or

20   jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc*., 477

21   U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

22   626, 630 (9th Cir. 1987).

ORDER - 7

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party.  The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.     Preliminary Matters**

      **1.     Contracts, Contractual Privity and Successor Liability**

IKS-SC argues that no writing supports Enterprises' alleged contract claims against it.  Dkt. 18 at 10.  Throughout the pleadings, IKS-SC denies contractual privity with any prior IKS entity.  *See, e.g.,* Dkt. 32 at 15.  Enterprises maintains that the obligation not to use the Lamb drawings without the permission runs to IKS-SC as a successor entity to IKS, making IKS-SC liable for the misconduct of its predecessors.  Dkt. 25 at 22. The parties did not sufficiently develop their arguments regarding the existence of contracts, contractual privity, and successor liability as applied to either party.  Therefore, those remain disputed issues of material fact.

1    **2.     Motion to Strike Portions of David Lamb's Declaration**

2         IKS-SC argues that portions of David Lamb's declaration (Dkt. 26) should be

3    stricken on the bases that one statement is hearsay (*Id*. ¶ 27), and several other statements

4    (*id.* ¶¶ 28, 29, 30 and 32) require expert knowledge, but Lamb has not been identified as

5    an expert.  Dkt. 32 at 15-16.  The Court finds the challenged statements admissible. The

6    statement identified as hearsay is not hearsay. As to the remaining statements IKS-SC

7    seeks to strike, the Court will allow them as testimony about Lamb's understanding of the

8    companies of which he is President and CEO, or their wholly owned subsidiaries, and the

9    industrial field in which he works.

10   **C.     Statute of Limitations and Laches**

11        Statutes of limitations do not typically begin to run until a cause of action accrues.

12   *See 1000 Virginia Ltd. Partnership v. Vertecs Corp*., 158 Wn.2d 566 (2006). Usually, a

13   cause of action accrues when the party has the right to apply to a court for relief. *Id*.

14   (*citing Gazija v. Nicholas Jerns Co*., 86 Wn.2d 215, 219 (1975) (citation omitted). In

15   many instances an action accrues immediately when the wrongful act occurs, but in some

16   circumstances where the plaintiff is unaware of harm sustained a "literal application of

17   the statute of limitations" could "result in grave injustice." *Id*. (*citing Gazija*, 86 Wn.2d at

18   220).  To avoid this injustice, courts have applied a discovery rule of accrual, under

19   which the cause of action accrues when the plaintiff discovers, or in the reasonable

20   exercise of diligence should discover, the elements of the cause of action.  *Id*. at 566-57

21   (*citing Green v. A.P.C.*, 136 Wn.2d 87, 95 (1998)).  This does not mean that the action

22   accrues when the plaintiff learns that he or she has a legal cause of action; rather, the

1  action accrues when the plaintiff discovers the salient facts underlying the elements of the

2  cause of action.  *Id*.

3        The discovery rule can apply when a defendant has fraudulently concealed a

4  material fact from a plaintiff, depriving the plaintiff of the knowledge of the accrual of

5  the cause of action.  *Burns v. McClinton*, 135 Wn. App. 285, 299 (2006).  It can also

6  apply where the nature of the plaintiff's injury makes it extremely difficult for the

7  plaintiff to learn the factual elements of the cause of action.  *Id*. at 299-300 *(citing*

8  *Crisman v. Crisman*, 85 Wn. App. 15, 20-21 (1997)).  It is an available argument in

9  breach of contract claims as well as tort claims.  *Id*. at 300 (*citing Wm. Dickson Co. v.*

10  *Pierce County*, 128 Wn. App. 488, 495-496 (2005)).

11        The question of due diligence, with respect to the discovery rule, is a question of

12  fact unless reasonable minds could reach but one conclusion.  *Id*. (*citing Allen v. State*,

13  118 Wn.2d 753, 760 (1992)). The plaintiff bears the burden of proving that the necessary

14  facts could not be discovered in time.  *Id*. (*citing Douglass v. Stanger*, 101 Wn. App. 243,

15  256 (2000)).

16        IKS-SC argues that the statute of limitations for each cause of action bars all of

17  Plaintiffs' claims. Dkt. 18 at 16. In sum, it argues that the operative misappropriation

18  event occurred  by June 2001 when LGH and the former  IKS entity  allegedly had no

19  rights in the subject Lamb drawings. *Id*.   IKS-SC maintains:

20        Enterprises objectively had to know that its alleged trade secrets (the
         subject  Lamb drawings) were in circulation and had not been returned to
21        LGH.  Yet, Enterprises sat on its hands and did nothing proactively to
         protect its alleged protectable interests in the subject Lamb drawings.

22

With respect to the three alleged breach of contract claims, Enterprises cause of action accrued by June 2001 and thus those claims are thus time-barred by June 2004.

With respect to Enterprises' trade secret misappropriation claim, the continued possession of the Lamb drawings following termination of the LGH license (per Enterprises' own allegations) rendered their continued possession  allegedly unlawful.  *See* Compl. 5.12.  Hence, the June 2001 date range triggers the 3 year statute of limitations applicable to trade secret claims and mandates dismissal of plaintiffs'  trade secret misappropriation claim.  RCW 19.108.060 ("An action for misappropriation must be brought within three years after the misappropriation  is discovered or by the exercise of reasonable diligence should have been discovered ....").

With respect to Enterprises' tort claims for conversion, unfair competition and replevin, the applicable three year statute of limitations (RCW 4.16.080(2)) also accrued as of June 2001, and are subsequently time-barred by June 2004.

*Id*.

Among other arguments, Plaintiffs maintain that their UTSA claim is timely and that the discovery rule should be applied to their replevin, conversion and CPA claims as well as to their contract claims.  Dkt. 25 at 25-29.  Plaintiffs cite UTSA to support that their misappropriation claim was timely made.  *Id*.  Plaintiffs argue that, consistent with the statute, they discovered the drawings misuse as soon as they should have discovered it through their exercise of reasonable diligence.  *See id*. (*citing* RCW 19.108.060). Plaintiffs maintain that they discovered misappropriation in 2012, and there is no evidence that they should have discovered it sooner.  *Id*.  Thus, they argue their lawsuit was timely filed in July 2012. *Id*.

While IKS-SC argues that Enterprises had to know the Lamb drawings were in circulation and had not been returned to LGH, there is no indication in the record that this put Enterprises on inquiry notice that IKS was misusing their drawings. Under the

1    invoices, it is not impermissible to possess the Lamb drawings, and Enterprises has not

2    argued that those contracts contain either a non-disclosure or a return provision.

3    Therefore, even if Enterprises knew that the Lamb drawings remained in IKS or a

4    successor entity's possession (*e.g.*, IKS-SC), the Court cannot conclude as a matter of

5    law that Plaintiffs should have known that drawings would be misused in violation of

6    LGH's prior agreement with IKS. IKS-SC has not proffered any evidence that

7    sufficiently contradicts the Plaintiffs' assertion that they were not on notice that IKS or

8    IKS-SC was misusing their Lamb drawings until Plaintiffs allegedly first discovered it in

9    2012.

10          Based on the foregoing, the Court finds that there is a genuine issue of material

11   fact as to whether Plaintiffs' misappropriation claim is timely.  Similarly, the Court finds

12   there is no uncontroverted evidence in the record to indicate Plaintiffs should have known

13   before 2012 that IKS or its alleged successor in interest was misusing the Lamb

14   drawings.  Whether the discovery rule applies to Plaintiffs' contract-based claims, or to

15   their conversion, replevin and CPA claims is also a genuine issue of material fact. *See,*

16   *e.g.*, Dkt. 25 at 18 (*citing Crisman v. Crisman*, 85 Wn. App. 15 (1997) (applying the rule

17   to a conversion claim); *Mayer v. Sto Industries, In*c., 123 Wn. App. 443 (2004) (applying

18   the rule to a CPA claim*), aff'd in part, rev'd in part on other grounds*, 156 Wn.2d 677

19   (2006). Therefore, summary judgment is denied on the basis of statute of limitations and,

20   for the same reasons, on the basis of laches.

21

22

**D.    Bankruptcy Proceedings**

     **1.    LGH's Chapter 7 Bankruptcy**

In summary, IKS-SC maintains that during the pendency of LGH's 2004 Chapter 7 bankruptcy, Enterprises could have initiated an adversary claim proceeding seeking return of the alleged trade secret Lamb drawings.  Dkt. 18 at 8 and 14.  IKS-SC argues that Enterprises had its first opportunity on June 1, 2001, when it both knew that LGH had to shut down its operations and had to know that LGH distributed alleged trade secret drawings to its vendors for manufacturing and fabrication.  *Id*. at 14.  IKS-SC concludes that because Enterprises failed to initiate a claim during the bankruptcy proceedings, its present claims are barred.

Plaintiffs maintain that LGH's Chapter 7 bankruptcy is not relevant to their claims. Dkt. 25 at 17.  Plaintiffs explain that Enterprises revoked the Haines & Emerson/LGH license to the Lamb drawings and acquired all assets of LGH long before the LGH bankruptcy.  *See id*. and Dkt. 27-4 at 35 (September 24, 2001 letter from Enterprises to Haines Emerson terminating their license term including rights to use Lamb drawings).  By the time of the LGH bankruptcy in 2004, Plaintiffs maintain there was nothing left for Enterprises to recover from LGH which it did not already have. *Id*.

    Further, Plaintiffs note that there was no discharge, as Chapter 7 does not provide a discharge to a corporation, only to "individuals."  Dkt. 25 at 17 (*citing* 11 U.S.C. § 727(a)(1); 101(41) (the term "individual" does not include a corporation); 1141(d)(3)). The LGH docket does not reveal a discharge.  *Id*. (*citing* Dkt. 19, Swanson Decl., Ex. C). Moreover, Plaintiffs maintain that "only a debtor receives a discharge in bankruptcy."  If

1    LGH had received a discharge, it would not have affected claims against IKS. *See, e.g.,*

2    11 U.S.C. § 524.

3         The Court finds that nothing in LGH's bankruptcy process indicates that

4    Enterprises should have engaged in an adversary proceeding to secure any of LGH's

5    assets, specifically the Lamb drawings.  Further, none of LGH's assets were distributed to

6    or otherwise transferred to IKS.  As Plaintiffs claim, Enterprises terminated LGH's

7    licensing agreement before they declared bankruptcy, and its wholly-owned subsidiary

8    Overstrapping, to whom US Bank sold all of LGH's assets, entered into an agreement

9    with Enterprises transferring all of LGH's assets to Enterprises.  Additionally, Plaintiffs

10   assert that later that same year, Enterprises incorporated another wholly owned

11   subsidiary, Legacy, which took over the remaining business of LGH. Regardless of

12   whether Lamb drawings remained in IKS's possession, nothing in the record

13   demonstrates that LGH's bankruptcy proceedings bar Plaintiffs' claims. Summary

14   judgment is denied on this basis.

15        **2.     IKS Chapter 11 Bankruptcy**

16        IKS-SC argues that when IKS filed for Chapter 11 bankruptcy Enterprises also

17   failed to file an adversary proceeding claim seeking the return of the subject Lamb

18   drawings, as required under the IKS reorganization plan, thereby barring Enterprises'

19   present claims. Dkt. 18 at 14.  IKS-SC maintains that it "is well established that once

20   confirmed, a debtor's reorganization plan binds the debtor and all creditors, regardless of

21   whether the creditor has accepted the plan. . . .  [A]n order confirming a reorganization

22   plan operates to discharge all unsecured debts and liabilities, even of  tort victims who

1   were unaware of the debtor's bankruptcy."  *Id.* at 14-15 (*citing DePippo v. Kmart Corp.*,

2   335 B.R. 290 (S.D.N.Y. 2005)).

3       Plaintiffs argue that IKS-SC's motion misstates their claims. Dkt. 25 at 15.

4   Plaintiffs note IKS-SC's contention that "Enterprises alleges that the possession and use

5   of the Lamb drawings became unlawful when [Enterprises] terminated LGH'[s] alleged

6   license rights to the drawings in 2001." *Id.* (*quoting* Dkt. 18 at 13). However, Plaintiffs

7   state that IKS-SC is incorrect in its conclusion that LGH therefore had a claim against

8   IKS at the time IKS filed for Chapter 11 reorganization.  Dkt. 25 at 15.  Plaintiffs

9   maintain that LGH's purchase orders did not make it a breach of contract for IKS to

10  possess the drawings in 2001. Dkt. 25 at 16. Plaintiffs note that they have not alleged

11  wrongful possession in 2001. *Id.*  Plaintiffs argue that the purchase orders made IKS an

12  insurer of the drawings and obligated IKS not to use them for any purpose other than

13  those directed by LGH.  *Id.*  Plaintiffs state that their claims focus on IKS's unauthorized

14  use, reproduction, and distribution of the drawings. *Id.* (*citing* Dkt. 1 at ¶¶ 1.1; 5.12; 5.22-

15  5.27; 6.2; 7.2; 8.2; 9.3; 10.3) and *see* Dkt. 70.  Plaintiffs state that they "did not have a

16  claim against IKS until it began to misuse the drawings." *Id.* They maintain that there is

17  no evidence that IKS actually misused the drawings before it filed for Chapter 11

18  reorganization or during its Chapter 11 case. *Id.*  Accordingly, Plaintiffs argue that IKS-

19  SC cannot obtain summary judgment on the ground that they should have filed a claim in

20  the Chapter 11 case. *Id.*

21      The Court agrees with the Plaintiffs that their claims are focused on misuse, not

22  possession. Therefore, Defendant's arguments that Plaintiffs' claims are barred based on

1    their failure to seek return of the drawings through an adversary proceeding during the

2    pendency of IKS's bankruptcy are without merit. However, because the Court has found

3    that there is a genuine issue of material fact as to when Plaintiffs knew or should have

4    known of IKS or its successor entities' alleged misuse of the drawings (*see supra.*), it

5    also finds that there is a genuine issue of material fact as to whether Plaintiffs were on

6    notice of the alleged misuse and should have made claims during IKS's bankruptcy.

7    Therefore, summary judgment on this ground is denied.

8    **E.    Displacement of Claims by UTSA[1]**

9            IKS-SC argues that all of Plaintiffs' state law claims must be dismissed as a matter

10   of law pursuant to the UTSA pre-emption, or "displacement" as it is sometimes called.

11   Dkt. 18 at 17-20.  In brief, IKS-SC argues that mandatory dismissal was created by a

12   "pleading dilemma" of Enterprises' "own making." *Id*. at 20.  Based on USTA and

13   case law interpreting and analyzing that statute, IKS-SC argues that Enterprises' decision

14   to allege a trade secret misappropriation claim as the centerpiece of its complaint

15   mandates dismissal of Enterprises' other claims. *Id*. at 17-20. IKS-SC argues that the text

16   of RCW 19.108.900(1) and the test set forth in *Thola v. Hensell*, 140 Wn.2d 70, 82

17   (2007), to determine whether UTSA pre-empts state law claims demonstrates that

18

19

---

20          [1] In their amended complaint, Plaintiffs have pleaded causes of action for both
21   misappropriation of trade secrets and copyright violations.  *See* Dkt. 70. The Court recognizes
     the potential mutual exclusivity of these claims. However, the issue was not briefed by the
     parties in their pleadings for this motion, but it is noted by IKS-SC (Dkt. 18 at 17-18 n. 2) and is
22   relevant to this case.

1  Plaintiffs other claims, which are based on the same set of core facts as its UTSA claim,

2  are pre-empted. *See* Dkt. 18 at 18.

3      **1.**    **UTSA**

4         To establish a trade secret misappropriation claim, a plaintiff must first show that a

5  legally protected trade secret exists.  *Nowogroski Ins., Inc. v. Rucker* ("*Rucker I*"), 88

6  Wn. App. 350, 356-577 (1999) , aff'd, 137 Wn.2d 427 (1999) (*citing Precision Moulding*

7  *& Frame, Inc. v. Simpson Door Co*., 77 Wn. App. 20, 25 (1995)). UTSA "displaces

8  conflicting tort, restitutionary, and other law of [Washington] state pertaining to civil

9  liability for misappropriation of a trade secret." RCW 19.108.900(1). UTSA does not,

10  however, affect contractual or other civil liability or relief that is not based upon

11  misappropriation of a trade secret. RCW 19.108.900(2)(a). Washington courts have

12  interpreted these provisions of the UTSA to mean that a plaintiff "may not rely on acts

13  that constitute trade secret misappropriation to support other causes of action." *Thola*,

14  140 Wn. App. at 82 (*quoting Rucker I*, 88 Wn. App. at 358). A majority of UTSA

15  jurisdictions, including Washington: (1) assess the facts that support the plaintiff's civil

16  claim; (2) ask whether those facts are the same as those that support the plaintiff's UTSA

17  claim; and (3) hold that UTSA preempts liability on the civil claim unless the common

18  law claim is factually independent from the UTSA claim.  *Id.*; *Ultimate Timing, LLC v.*

19  *Simms*, 715 F. Supp. 2d 1195, 1208 (W.D. Wash.2008). [2]  To determine whether UTSA

20

21         [2] *Ultimate Timing, LLC*, 715 F. Supp. at 1208 (on summary judgment court concluded as

22  a matter of law that conversion claim should be dismissed as it rested on the same set of facts as its misappropriation claim).

1    preempts a common law claim, the court must "(1) assess the facts that support the

2    plaintiff's civil claim; (2) ask whether those facts are the same as those that support the

3    plaintiff's UTSA claim; and (3) hold that the UTSA preempts liability on the civil claim

4    unless the common law claim is factually independent from the UTSA claim." *Id.*

5    "[P]roper application of this three-step analysis precludes duplicate recovery for a single

6    wrong." *Thola*, 140 Wn. App. at 82.

7         Almost all states have enacted the UTSA (or some version thereof) "to make

8    uniform traditional common law trade secret protections." *Thola*, 140 Wn.App. at 79

9    (*citing* RCW 19.108.910).  The Washington Court of Appeals has instructed that, when

10   possible, it construes the UTSA to achieve uniformity among jurisdictions that have

11   enacted it.  *Id*. (*citing* RCW 19.108.910 ("This chapter shall be applied and construed to

12   effectuate its general purpose to make uniform the law with respect to the subject of this

13   chapter among states enacting it")).

14        "[A] majority of jurisdictions considering the question have held that a court 'need

15   not first determine whether the information that [plaintiff] alleges was misappropriated

16   constitutes a trade secret before determining whether [the UTSA] displaces [plaintiff's]

17   common-law claims.'" *CDC Restoration & Constr., LC v. Tradesmen Contractors, LLC*,

18   274 P.3d 317, 330 n. 6 (Utah Ct. App. 2012) (*quoting Allied Erecting & Dismantling Co.

19   v. Genesis Equip. & Mfg., Inc*., 649 F. Supp. 2d 702, 721–22 (N.D. Ohio 2009)

20   (collecting cases)); *see also BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.*, 123 Hawai'i

21   314, 235 P.3d 310, 324 (Haw. 2010) (holding that a court need not wait to determine if

22

the allegedly misappropriated information constitutes a trade secret, as that term is

defined in the HUTSA, before considering preemption).

The aforementioned conclusion stems from the fact that "the UTSA's preemption

provision has generally been interpreted to abolish all free-standing alternative causes of

action for theft or misuse of confidential, proprietary, or otherwise secret information

falling short of trade-secret status." *CDC Restoration*, 274 P.3d at 329 (*quoting Hauck*

*Mfg. Co. v. Astec Indus., Inc.*, 375 F. Supp. 2d 649, 655 (E.D. Tenn. 2004) (collecting

cases))*; see also BlueEarth Biofuels*, 235 P.3d at 323 (Haw. 2010) (holding "that the

HUTSA preempts non-contract, civil claims based on the improper acquisition,

disclosure or use of confidential and/or commercially valuable information that does not

rise to the level of a statutorily defined trade secret"); *Mortg. Specialists, Inc. v. Davey*,

153 N.H. 764, 904 A.2d 652, 663–664 (N.H. 2006) (collecting cases); *Robbins v.*

*Supermarket Equip. Sales, LLC*, 722 S.E.2d 55, 58 (Ga. 2012).[3]  The principle that only

non-contract, civil claims are preempted is consistent with case law from the Washington

State Supreme Court. *See Boeing v. Sierracin,* 108 Wn.2d 38, 47-48 (1987) (in

determining whether a claim for breach of contract should be consolidated with a

misappropriation claim, the court found in the negative holding that the misappropriation

claim did not pre-empt plaintiff's contractual claim).

---

[3] *International Paper Co v. Stuit*, 2012 WL 1857143 (W.D. Wash.), an unpublished case, involving in part a 12(b)(6) dismissal of state law claims (interference with actual and prospective business relations; tortuous interference with confidentiality agreements; and violations of the CPA) on the basis of USTA pre-emption, provides a very similar analysis which this Court embraces as consistent with its own view of case law on the subject.

1       **2.     Application of UTSA to Other State Law Claims**

2       Defendants argue that the analysis in *Thola* is applicable to this case and thus

3 dismissal of Plaintiffs' other state law claims is required. An examination of Plaintiffs'

4 amended complaint makes clear that they rely on the same set of core facts to support

5 claims for breach of contract; breach of implied contract in fact: quantum meruit; breach

6 of contract implied in law: unjust enrichment; conversion; unfair competition pursuant to

7 RCW 19.86, *et seq.* (Consumer Protection Act ("CPA")); and replevin  as well as their

8 misappropriation of trade secrets claim.  Plaintiffs' amended complaint sets forth alleged

9 facts and then simply incorporates them by reference to support each cause of action,

10 including the misappropriation of trade secrets claim.  *See* Dkt. 70.  Although for each

11 cause of action, Plaintiffs have recited the elements for each claim, which differ from

12 elements of the other causes of action, the allegations necessary to prove each element

13 still relate to the same core set of facts.  The *Thola* court noted that "[i]n some

14 jurisdictions, a common law claim is not preempted if the elements require some

15 allegation or factual showing beyond those required under the UTSA."  *Thola*, 140 Wn.

16 App. at 82 n. 5. However, the Washington State Court of Appeals declined to adopt this

17 view of the UTSA (*see id*.), and instead set forth the three-part test articulated above,

18 which focuses on the underlying facts supporting each claim, rather than the elements of

19 each claim.  *Id.* at 82.

20       While Plaintiffs' contract claims rest on the same set of core facts as their

21 misappropriation claim, state and district courts which have adopted a uniform trade

22

secret act have typically applied preemption only to non-contract civil causes of action.[4]
*See, e.g., Boeing,* 108 Wn. 2d at 47-48*; BlueEarth Biofuels*, 235 P.3d at 323 (Haw. 2010).
Therefore, Plaintiffs' claims for conversion, replevin and violation of the CPA are
preempted. Accordingly, IKS's motion for summary judgment dismissal of those claims
on the basis of UTSA preemption is granted. Plaintiffs' contract claims are not pre-
empted and thus summary judgment on that basis is denied.

## IV. ORDER

Therefore, it is hereby **ORDERED** that IKS-SC's motion for summary judgment
(Dkt. 18) is **GRANTED in part** and **DENIED in part** in accordance with the reasoning
set forth above.

Dated this 26th day of November, 2013.

BENJAMIN H. SETTLE
United States District Judge

---

[4] Defendants state that if Plaintiffs could prove the existence of some contract between
LGH and IKS then Plaintiffs' contract claims would not be pre-empted under *Boeing*. Dkt. 32 at
15.