UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ENTERPRISES INTERNATIONAL, INC., et al.,

        Plaintiffs,

v.

INTERNATIONAL KNIFE & SAW, INC., et al.,

        Defendants.

CASE NO. C12-5638 BHS

ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

This matter comes before the Court on the motion of Plaintiffs Enterprises International, Inc. ("Enterprises"), Legacy Automation, Inc. ("Legacy"), and Ovalstrapping International ("Ovalstrapping") (collectively "Plaintiffs") for partial summary judgment on certain copyright claims (Dkt. 104) against Defendants International Knife and Saw, a South Caroline Corporation ("IKS-SC"), International Knife and Saw, Inc., a Quebec corporation ("IKS-Quebec"), and International Knife and Saw De Mexico, S.A. DE C.V., a Mexican variable capital corporation ("IKS-Mexico") (collectively "Defendants"). The Court has considered the pleadings filed in support of

ORDER - 1

1  and in opposition to the motion and the remainder of the file and hereby denies the
2  motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

4        On July 18, 2012, Plaintiffs Enterprises and Legacy, a wholly-owned subsidiary of
5  Enterprises, both Washington corporations, filed a complaint alleging multiple causes of
6  action against IKS-SC related to misuse of technical drawings for knife blades ("Lamb
7  drawings"). Dkt. 1. On May 23, 2013, IKS-SC filed a motion for summary judgment
8  seeking dismissal as a matter of law for all claims alleged against it. Dkt. 18. On June 10,
9  2013, Plaintiffs filed a response in opposition to IKS-SC's motion for summary
10 judgment. Dkt. 25. On June 14, 2013, IKS-SC filed a reply. Dkt. 32.

11       On July 26, 2013, the parties submitted a stipulation and proposed order seeking to
12 enlarge the case schedule and permitting Plaintiffs to amend their complaint. Dkt. 66. On
13 July 26, 2013, the Court entered an order permitting enlargement of the case schedule and
14 amendment of the complaint. Dkt. 67. On July 29, 2013, Plaintiffs filed an amended
15 complaint adding additional parties and claims. Dkt. 70. Plaintiff Ovalstrapping was
16 joined. *Id.* at 1-2. Additionally, Plaintiffs named IKS-Quebec and IKS-Mexico as
17 Defendants. *Id.* at 1-3.

18       Plaintiffs' amended complaint alleges eight causes of action and seeks monetary
19 damages, an order of replevin, injunctive relief, as well as attorney's fees, costs and
20 expenses. *See* Dkt. 70 at 14-15. Plaintiffs' causes of action are: (1) breach of contract; (2)
21 breach of implied contract in fact: quantum meruit; (3) breach of contract implied in law:
22 unjust enrichment; (4) misappropriation of trade secrets pursuant to RCW 19.108, et seq.;

(5) conversion; (6) unfair competition pursuant to RCW 19.86, *et seq*.; (7) replevin; and (8) copyright infringement pursuant to 17 U.S.C. § 106. *Id*. at 8-14.

On November 26, 2013, the Court issued an order granting in part and denying in part Defendant IKS-SC's summary judgment motion. Dkt. 86. Specifically, the Court granted summary judgment finding Plaintiffs' claims for conversion, replevin, and unfair competition pursuant to RCW 19.86 pre-empted under the Uniform Trade Secrets Act ("UTSA"), RCW 19.108, *et seq*. *See* Dkt. 86 at 21. Plaintiffs' contract, trade secret misappropriation, and copyright infringement claims remain.

On December 26, 2013, Plaintiffs filed a motion for partial summary judgment based on alleged copyright infringement of three Lamb drawings (18D22B, 18D47R and 18D48R) and seeking injunctive relief. Dkt. 104. On January 13, 2014, Defendants responded in opposition to Plaintiffs' motion. Dkt. 115. On January 17, 2014, Plaintiffs filed a reply. Dkt. 118.

## II. FACTUAL BACKGROUND

Plaintiff Enterprises is a holding corporation. Dkt. 26 at 2 (Declaration of David Lamb ¶ 6). Over several decades it has owned different companies which design, manufacture, and sell products under the brand name "Lamb" in the pulp and paper industry. *Id*. ¶¶ 1-26. Enterprises maintains that its practice has long been to hold title to all intellectual property, including design and engineering drawings, created by the Lamb family of companies and their employees. *Id*. ¶¶ 9-10; Declaration of C. James Frush, Exs. 1, 12. Enterprises licenses its wholly owned intellectual property to its subsidiaries. *Id*.; Frush Decl. Exs. 3, 13.

1      Haines & Emerson, Inc. was one of Enterprises' subsidiaries. Lamb Decl. ¶¶ 7-
2 15; Frush Decl. Ex. 2. Haines & Emerson owned Lamb Grays Harbor Co. ("LGH"). *Id*.
3 Enterprises licensed certain intellectual property to Haines & Emerson and LGH,
4 including design drawings for the knives used in Lamb cutter layboys. *Id*.; Frush Decl.,
5 Ex. 3. Until 2001, LGH sold the Lamb cutter layboy knives. *Id*. ¶ 26.

6      LGH hired International Knife and Saw ("IKS"), Defendants' alleged predecessor
7 entity, to fabricate knives. Frush Decl., Ex. 4. LGH provided IKS with the necessary
8 design drawings for the knives. Lamb Decl. ¶ 21; Frush Decl., Ex. 4 at EII 342 (referring
9 to "drawings in your (IKS's) possession"). LGH accumulated a trade debt to IKS. In
10 September 2001, Enterprises terminated Haines & Emerson's and LGH's license to the
11 design drawings for the cutter layboy knives. Lamb Decl. ¶ 15; Frush Decl. Ex. 9. On
12 September 24, 2001, Enterprises incorporated a new wholly owned subsidiary, Legacy,
13 which eventually took over the remaining business of LGH. Lamb Decl. ¶¶ 18, 19, 26;
14 Frush Decl., Ex. 10. LGH's corporate existence finally expired on July 31, 2006.
15 Swanson Decl., Ex. A, p. 7.

16      In 2001, US Bank foreclosed on and acquired all of LGH's assets. Lamb Decl. ¶
17 16; Frush Decl., Ex. 11. U.S Bank then sold those assets to Ovalstrapping Acquisition
18 Corporation, a wholly owned subsidiary of Ovalstrapping, which is a wholly owned
19 subsidiary of Enterprises. *Id.*; Frush Decl., Exs. 11 and 12. Enterprises and Ovalstrapping
20 Acquisition Corporation entered into an assignment agreement transferring all intellectual
21 property acquired in the purchase of LGH's assets to Enterprises. *Id.*; Frush Decl., Ex. 12.
22 According to Enterprises, it became the successor in interest to LGH's rights under its

contracts with IKS. Dkt. 25 at 10. On October 1, 2003, Enterprises licensed to Legacy the use of the Lamb design drawings. *Id*., ¶ 19; Frush Decl., Ex. 13.

In September 2001, IKS filed for Chapter 11 reorganization. Swanson Decl., Ex. E. In 2003, during IKS's Chapter 11 reorganization process, Legacy bought knives from IKS based on the Lamb drawings. Frush Decl., Ex. 14, EII 213. In June 2003, the final decree closing IKS's chapter 11 bankruptcy was issued. Dkt. 32 at 8 (*citing* Swanson Decl., ¶ 6). In October 2003, the reorganized IKS merged with Simonds International ("Simonds"). *Id*. (*citing* Swanson Decl. ¶ 10 and Ex. 1).

In January of 2004, LGH filed a Chapter 7 bankruptcy petition, and it proceedings terminated in July 2005 with no asset distribution. *Id*. (*citing* Swanson Decl., ¶ 4 and Ex. C). In 2005 and 2006, Ovalstrapping and Simonds enter into purchase order agreements for products based on Lamb drawings. Dkt. 32 at 8-9 (*citing* Swanson Decl., Ex. H and Swanson Supp. Decl., ¶ 12 and Ex. J).

In June of 2006, International Knife and Saw/American Custom Metals, Inc., a South Carolina corporation ("IKS/AMC"), Simonds, and IKS entered into an asset purchase agreement, which IKS-SC asserts formed IKS/ACM. Dkt. 32 at 9 (*citing* Swanson Decl., Ex. J). In July and December 2007, Ovalstrapping and IKS/ACM entered into a non-disclosure agreement and a purchase order regarding a product per a certain Lamb drawing. Dkt. 32 at 9.

In January 2008, according to IKS-SC, a security purchase agreement was entered into by multiple entities resulting in its formation. Dkt. 32 at 9 (*citing* Swanson Decl., Ex. K (filed under seal)).

## III. DISCUSSION

In Plaintiffs' motion for partial summary judgment, they argue that Enterprises owns U.S. Copyright Registration Nos. VAu 1-143-780, VAu-1-143-781 and VAu 1-143-782. Dkt. 104 at 3. According to Plaintiffs, these cover the content of 44 Lamb fabrication drawings, including drawings 18D22B, 18D47R and 18D48R which are at issue in this motion. Dkt. 104 at 3 (*citing* Dkt. 105-1 at 22-24, Ex. 34 (Declaration of C. James Frush)). Through prior dealings among Enterprises, LGH, Legacy, Ovalstrapping, and entities which Defendants are successors in interest, Plaintiffs maintain that Defendants possess 44 Lamb drawings, which are covered by the three copyrights. Dkt. 104 at 4 (*citing* Dkt. 105 at ¶ 6 (Frush Decl.)). Despite the steps Enterprises' subsidiaries took to ensure that IKS and its predecessors understood the limitations on their "allowed use of the Lamb drawings," Enterprises argues Defendants infringed on their copyrights by intentionally copying drawings 18D22B, 18D47R and 18D48R. Plaintiffs, therefore, seek partial summary judgment for copyright infringement on those three drawings.

Defendants maintain they are not liable to Plaintiffs for copyright infringement. Dkt. 115. Among the many arguments they wage, Defendants contend that only Enterprises, not its subsidiaries, has standing to sue, and the Lamb fabrication drawings are not protected from infringement by copyright law. *See id.*

**A.     Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material

fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

        The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory,

nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.      Standing to Sue for Copyright Violations**

Pursuant to the Copyright Act of 1976 ("Act"), 17 U.S.C. § 501(b), only the legal or beneficial owner of an exclusive copyright interest is legally authorized to sue for alleged copyright infringement. *See Silvers v. Sony Pictures Entertainment, Inc.*, 402 F.3d 881 (9th Cir. 2005) (assignee who has no legal or beneficial interest in the underlying copyright may not institute a copyright infringement action).

In this case, as Defendants argue, only the alleged copyright owner, Enterprises, owns the copyright interest. Dkt. 115 at 21.  They maintain that neither Ovalstrapping nor Legacy possess a right to sue for alleged infringement pursuant to the only written license agreement produced in this case. *Id*.  That right to sue is reserved to Enterprises under its 2003 license agreement with Legacy. *Id*. at 17 and 21 (*citing* Swanson Decl. Ex. U (Dep. Ex. 144, EII 00293-303).  Therefore, Defendants conclude that neither Ovalstrapping nor Legacy has any right to sue for alleged copyright infringement.  Dkt. 115 at 21.

Plaintiffs argue that Defendants are incorrect and that Ovalstrapping or Legacy could sue as an exclusive licensee. Dkt. 118 at 9 (*citing Eden Toys, Inc. v. Florelee Undergarment Co., Inc*., 697 F.2d 27, 30 (1982).  Plaintiffs are incorrect. In *Eden Toys*, the court found that the licensee, Eden, could sue for certain violations, including copyright infringement, because the licensing agreement it entered into with licensor, Paddington and Company Limited, explicitly permitted Eden to do so.  There is no

1  evidence of such an agreement here.  Nonetheless, Enterprises has standing to sue for
2  copyright infringement.

3  **C.     Scope of Copyright**

4       The Court must first determine "the scope of copyright protection before works
5  are considered as a whole." *Apple Computer, Inc. v. Microsoft Corp*., 35 F.3d 1435, 1443
6  (9th Cir.1994) (quotation omitted). In no case does copyright protection for an original
7  work of authorship extend to any idea, procedure, process, system, method of operation,
8  concept, principle, or discovery, regardless of the form in which it is described,
9  explained, illustrated, or embodied in such work.  17 U.S.C. §102(b).  "Copyright law
10 only protects expression of ideas, not the ideas themselves." *Cavalier v. Random House,*
11 *Inc*., 297 F.3d 815, 823 (9th Cir.2002). "The copyright is limited to those aspects of the
12 work – termed 'expression' – that display the stamp of the author's originality." *Harper*
13 *& Row Publishers, Inc. v. Nation Enters*., 471 U.S. 539, 547 (1985).

14      Defendants maintain that the Lamb fabrication drawings are not copyrightable
15 material for multiple reasons.  Dkt. 115.  Defendants argue the Lamb drawings are
16 technical drawings for utilitarian, functional industrial design component parts and are
17 designs of useful articles.  *Id*. at 8.  As such, these technical drawings can have no
18 copyright protections under the Act.  *Id.*  Defendants maintain that Plaintiffs' own
19 deposition testimony regarding the drawings reveals that the drawings and information
20 specified in them contain only functional information regarding how to construct a
21 specific blade or knife. *Id*. at 19.    The deposition testimony of David Stanton, Plaintiffs'
22 witness, states that the purpose of the Lamb drawings is to manufacture knives and parts

for pulp cutters; they have no other purpose.  *See* Dkt. 116-2 at 37, Swanson Decl., Ex. I. The intent of the LGH fabrication drawings is to "provide all the information required to build a part that works on the machine." Dkt. 115 at 19 (*citing* Dkt. 116-2 at 6, Swanson Decl., Ex. G (Deposition of Steve Hood, Director of Engineering for Legacy)).

Enterprises argues that their design drawings are copyrightable material.  Dkt. 118 at 9.  To support its position, Enterprises relies on *Oldcaste Precast, Inc. v. Concrete, Inc.,* 2011 WL 813759 (W.D. Wash.). Enterprises argues that in *Oldcaste Precast*, the plaintiff claimed that the defendants copied and infringed on its technical drawings for manufactured concrete vaults. Dkt. 118 at 10. Enterprises maintains that in *Oldcaste Precast* the defendants made the same argument that IKS is making in this case: "that a design drawing is not copyrightable; it is merely an idea, not an expression of an idea." *Id*.  In that case, Judge Marsha Pechman disagreed with the defendants, finding that technical drawings are expressly included as works covered by the Act. *Id.* (*citing Oldcaste Precast*, 2011 WL 81379 at *5). As Enterprises observes, in that case, Judge Pechman found in part:

> They are expressions of an idea: a utility vault, for example. Plaintiff is not claiming that it has a copyright for all precast utility vaults .…The claim is made only as to technical drawings, which are particular expressions of various ideas of precast items.

*Id*. Enterprises argues it is not claiming protection for some "general idea of a pulp knife and trying to prevent IKS from creating any drawing of a knife," which would not be protected under the Act.  Dkt. 118 at 10.  Rather, like the plaintiff in *Oldcaste Precast*, who sought protection of their drawings of a "particular expression of various ideas of

1 precast items," it is claiming copyright protection for "particular expression of the ideas
2 of a pulp knife, specific technical drawings that 'contain details about size, placement and
3 location of various features of the [product] it may later create.'" Dkt. 118 at 10 (*quoting*
4 *Oldcaste Precast*, 2011 WL 81379 at *5).

5 Further, Enterprises maintains their drawings are not "useful article[s]" because
6 such articles "hav[e] an intrinsic utilitarian function that is not merely to portray the
7 appearance of the article or to convey information." Dkt. 118 at 10 (*citing Oldcaste*
8 *Precast,* 2011 WL 813759 *5). A technical drawing, like a Lamb drawing, however, is
9 created precisely to "convey information"; hence, like the drawings of precast utility
10 vaults in *Oldcaste*, it is not a useful article. *Id.* (*citing Oldcaste Precast,* 2011 WL 813759
11 *5). Therefore, Enterprises contends, Defendants' assertion that its Lamb drawings are
12 useful articles is meritless. Dkt. 118 at 10.

13 The Lamb fabrication drawings in this case appear to fall into the category of
14 "[p]ictorial, graphic, and sculptural works" under § 102(a)(5), which are protected from
15 infringement under the Act. Pictorial, graphic and sculptural works are defined to
16 "include two-dimensional and three-dimensional works of fine, graphic … maps, globes,
17 charts, diagrams, models, and technical drawings, including architectural plans." 17
18 U.S.C. § 101. However, within this category of works are "design[s] of [] useful articles,"
19 which are considered:

20 > pictorial, graphic, or sculptural work *only if,* and *only to the extent that,*
> *such design incorporates* pictorial, graphic, or sculptural *features that can*
21 > *be identified separately from, and are capable of existing independently of,*
> *the utilitarian aspects of the article*.
22

17 U.S.C. § 101 (emphasis added). By definition, the Act limits the type of design drawings it protects from infringement. Technical drawings admittedly containing only functional, utilitarian information, which is used solely to fabricate only specific objects for particular industrial use, are not protected from infringement under the Act.

While the Lamb drawings may not be considered "useful articles," they are designs of useful articles. The copying of these types of technical design drawings, which are used only for the fabrication of specific knives or knife blades, when the designs *admittedly* contain only functional and utilitarian information, the sole purpose of which is to manufacture specific types of knives or blades to precisely fit certain machines, does not constitute a violation of the Act. The court in *Oldcaste Precast* did not find it necessary to consider the definitional limitations set forth in 17 U.S.C. § 101 regarding what types of design drawings could be covered under the Act.

Further, unlike the drawings of precast vaults in *Oldcaste Precast*, the technical drawings in this case cannot be separated from the utilitarian aspects of the article they are used to create. In *Oldcaste Precast*, the drawings of the vaults were not made simply to manufacture replacement parts, *i.e.* very specific parts made to precisely fit only specific industrial machines. Rather, Oldcaste's drawings of the vaults were designed to "contain details about … various features of the vaults they may later create," and for which there existed a range of ways to express the idea of a precast vault, even where the vaults were similarly sized. *Oldcaste*, 2011 WL 81359 * 7. In effect, the technical drawings of precast vaults could and did incorporate features with a range of artistic

1  expression that existed independently of the utilitarian or purely functional aspects of a
2  vault. *See id.* This is not so with the drawings in this case.

## IV. ORDER

Therefore, it is hereby **ORDERED** that Plaintiffs' motion for partial summary (Dkt. 104) judgment is **DENIED**.

Dated this 7th day of April, 2014.

BENJAMIN H. SETTLE
United States District Judge